# FOWLER v. EQUITABLE TRUST COMPANY.

# EQUITABLE TRUST COMPANY v. FOWLER.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Nos. 32, 33. Argued April 16, 17, 1891. — Decided October 26, 1891.

Upon the rendition of a decree, a petition and motion for a rehearing was filed. At the succeeding term of the court an order was entered, granting a rehearing, which order was entered as of a previous term. The record contained no order showing the continuance of the motion and the petition for rehearing to the succeeding term. *Held*, that the presumption must be indulged, in support of the action of a court having jurisdiction of the parties and the subject matter — nothing to the contrary affirmatively appearing — that the facts existed which justified its action; and, therefore, that the court granted the application for a rehearing at the previous term.

The question of usury, in a loan made in 1873 to a citizen of Illinois by a Connecticut corporation — the loan being evidenced by notes of the

borrower payable in New York, and secured by mortgage upon real estate in Illinois, is to be determined by the laws of the latter State pursuant to its statute providing, in substance, that where any contract or loan shall be made in Illinois, or between citizens of that State and any other State or country, at a rate legal under the laws of Illinois, it shall be lawful to make the principal and interest payable in any other State or Territory, or in London, in which cases the contract or loan shall be governed by the laws of Illinois, unaffected by the laws of the State or country where the same shall be made payable.

It is settled doctrine in Illinois that the mere taking of interest in advance does not bring a loan within the prohibition against usury: but whether that doctrine would apply where the loan was for such period that the exaction by the lender of interest in advance would, at the outset, absorb so much of the principal as to leave the borrower very little of the amount agreed to be loaned to him is not decided.

A contract for the loan or forbearance of money at the highest legal rate is not usury in Illinois, merely because the broker who obtains a loan — but who has no legal or established connection with the lender as agent and no arrangement with the lender in respect to compensation for his services — exacts and receives, in addition to the interest to be paid to the lender, commissions from the borrower.

If a corporation of another State, through one of its local agents in Illinois, negotiates a loan of money to a citizen of the latter State, at the highest rate allowed by its laws, and the agent charges the borrower, in addition, commissions for his services pursuant to a general arrangement made with the company, at the time he became agent, that he was to get pay for his services as agent in commissions from borrowers, such loan is usurious under the law of Illinois, although the company was not informed, in the particular case, that the agent exacted and received commissions from the borrower.

In Illinois, when the contract of loan is usurious, the lender, suing the borrower for the balance due, can only recover the principal sum, diminished by applying as credits thereon all payments made on account of interest. In such cases, whatever the borrower pays on account of the loan goes as a credit on the principal sum.

A trust deed, covering real estate, provided that in the case of a sale by the trustee, at public auction, upon advertisement, all costs, charges and expenses of such advertisement, sale and conveyance, including commissions, such as were at the time of the sale allowed by the laws of Illinois to sheriffs on sale of real estate on execution, should be paid out of the proceeds. *Held,* (1) that this provision did not impose upon the borrower the burden of paying to a lender a solicitor's fee where a suit was brought for foreclosure: (2) that the commissions referred to in the deed are allowed only where the property is sold, upon advertisement, by the trustee, without suit.

THE court stated the case as follows:

By deed, bearing date November 1, 1873, and acknowledged and filed for record February 23, 1874, Edwin S. Fowler — his wife, Sophie Fowler, uniting with him — conveyed to Jonathan Edwards, in fee simple, certain real estate in the city of Springfield, Illinois, in trust to secure the payment of the principal and interest of nine bonds, of one thousand dollars each, executed by Fowler to the Equitable Trust Company, a Connecticut corporation, and payable, principal and interest, at its office in the city of New York; the principal, five years after date, and the interest, semi-annually, at the rate of seven per cent per annum.

The deed recited that the bonds were given to secure a loan of nine thousand dollars, payable five years after date thereof, with interest at ten per cent per annum, of which seven per cent per annum was secured by the deed of trust, and was to be paid as in the bond provided, and the balance, to wit, three per cent per annum, was "discounted," and paid at the time of the execution of the deed. In case of default in paying the principal or interest as each matured, or of failure to keep and perform the covenants of the deed or any of them, the trustee was authorized to sell, at public auction, after advertisement, to the highest bidder for cash, and with or without previous entry upon the premises, the right and equity of redemption of the grantors, and out of the proceeds of sale to pay the costs, charges and expenses of the advertisement, sale and conveyance, "including commissions such as are, at the time of such sale, allowed by the laws of Illinois to sheriffs on sale of real estate on execution," all sums paid by the trustee for insurance and taxes, with ten per cent interest thereon from time of payment, the principal and the accrued interest remaining unpaid at the time of sale, and to Fowler any balance remaining.

The present suit was brought, October 26, 1882, to foreclose the defendants' right and equity of redemption, and for a sale of the mortgaged property to raise such sum as might be due, the mortgagee.

Fowler, by his answer, put the plaintiff upon proof of the averments of the bill, and made defence upon several grounds.

But the original answer is important only as alleging that the loan was usurious, and was consummated in the manner it was with intent to evade the statutes of Illinois relating to interest.

The plaintiff filed a general replication; and subsequently, the defendants, by leave of the court, amended their answer, stating more fully the grounds upon which they based the defence of usury. They also alleged that the contract of loan was and is a New York contract, and that by the statutes of that State it was usurious, in that the interest contracted to be received by the plaintiff, having regard to the amount actually advanced by it, was in excess of seven per cent per annum, the rate established by the laws of New York. Of those statutes they claimed the benefit.

[The facts proved, and which were relied upon to establish that the contract was usurious under the laws of New York, are stated in the opinion of the court, *post* pages 397–399.]

By a decree passed October 20, 1884, the court below found the amount due from Fowler to be only $2980.67 on the bonds, and $270.94, insurance and taxes paid by the plaintiff with interest thereon; in all, $3251.61. At the foot of that decree were these orders:

"And thereupon the complainant entered its motion for a rehearing before a full bench.

"Whereupon, on said 20th day of October, of the year last aforesaid [1884] came the complainant, by its solicitor, and filed in the clerk's office of said court its motion and petition for a rehearing in this cause, which motion and petition are as follows," etc.

Following the above, in the transcript, are the written motion and petition for rehearing.

On the 8th of June, 1885, the succeeding term, the cause was set for hearing on the 29th of that month before what is called a full bench. Then appears an order, under date of June 30, 1885, entered as of October 31, 1884, granting the rehearing asked. To that order the defendants excepted.

By the final decree of January 11, 1887, the sum of $8150.79 was adjudged to be due the Trust Company, of which $7809.69 was found to be the sum actually advanced by it to Fowler,

and $341.10 was the amount of insurance and taxes on the property paid by the company, with interest on each sum, from the date of the decree, at the rate of six per cent per annum. The mortgaged property was ordered to be sold to raise the above aggregate amount found to be due, with such interest and the costs of the suit. From that decree each party has prosecuted an appeal; the defendants insisting that no decree, for any amount, should have gone against them, while the plaintiff insists that the decree should have been for a larger amount.

*Mr. William L. Gross,*[1] for the Equitable Trust Company, argued as to the defence of usury:

I. Usury is a local question. It is the *lex loci contractus* which governs in respect of usury. *De Wolf* v. *Johnson*, 10 Wheat. 367; *Andrews* v. *Pond*, 13 Pet. 64; *Cromwell* v. *County of Sac*, 96 U. S. 51, 62; *Call* v. *Palmer*, 116 U. S. 98; *Latrobe* v. *Hulbert*, 6 Fed. Rep. 209.

II. *Allegata et Probata.* The rule is general, and without exception, that an averment or plea of usury, must be proved as laid. *Ewing* v. *Howard*, 7 Wall. 499; *Drake* v. *Watson*, 4 Day, 37; *Wilmot* v. *Monson*, 4 Day, 114; *Brown* v. *Mortgage Co.*, 110 Illinois, 235; *Kihlholz* v. *Wolf*, 103 Illinois, 362; *Phillips* v. *Roberts*, 90 Illinois, 492; *Telford* v. *Garrels*, 132 Illinois, 550; *Beach* v. *Fulton Bank*, 3 Wend. 573; *Smith* v. *Brush*, 8 Johns. 84. And if the defendant fails in proving the usurious contract in the way and manner in which he has charged it in his plea or answer, the defence must fail. *Vroom* v. *Ditmas*, 4 Paige, 526.

III. Intent is an essential ingredient. If the transaction, says the court, in *Bank* v. *Owens*, 2 Pet. 527, was in violation of the restriction in the bank's charter limiting its power to "take" more than 6 per cent interest, "it could only have been upon the ground of an *intention*" to evade the statute. So also: "In construing the usury laws, the uniform construc-

---

[1] This case was argued with *Fowler* v. *Equitable Trust Co.*, post 408, and *Fowler* v. *Equitable Trust Co., post* 411.

tion in England has been, (and it is equally applicable here,) that to constitute usury within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest; for if neither party intend it, but act *bona fide* and innocently, the law will not infer a corrupt agreement. Where, indeed, the contract upon its face imports usury, as by an express reservation of more than legal interest, there is no room for presumption; for the intent is apparent; *res ipsa loquitur.* But where the contract, on its face, is for legal interest only, there it must be proved that there was some corrupt agreement or device, or shift, to cover usury; and that it was in the full contemplation of the parties. . . . The *quo animo* is, therefore, an essential ingredient in all cases of this sort." *United States Bank* v. *Waggener,* 9 Pet. 378, 399. See also *Hotel Co.* v. *Wade,* 97 U. S. 13, 23; *Lloyd* v. *Scott,* 4 Pet. 205; *Palmer* v. *Call,* 7 Fed. Rep. 737.

IV. *Commissions by agent or broker.* When an agent, authorized to loan money at lawful interest, exacts for his own benefit more than the lawful rate, without the knowledge or authority of his principal, the loan is not thereby rendered usurious. The loaner of the money must not only be a party to the usurious contract, but he must take the usury. *Call* v. *Palmer,* 116 U. S. 98. And when the evidence fails to show that the commission was paid to the loaner, the defence of usury, based thereon, will not be sustained. *Grant* v. *Phœnix Life Ins. Co.,* 121 U. S. 105, 117.

Agent's commissions, as an element in usury defences, has often been before the Supreme Court of Illinois:

*Ballinger* v. *Bourland,* 87 Illinois, 513. There the agent procured a loan and charged a commission and expenses to borrower, but without the lender's knowledge and not for the lender's benefit, and the court said it was not usury. See also *Colehour* v. *State Sav. Ins.,* 90 Illinois, 152; *Boylston* v. *Bain,* 90 Illinois, 283; *Phillips* v. *Roberts,* 90 Illinois, 492.

*Payne* v. *Newcomb,* 100 Illinois, 611. There the loan agent was required to learn the situation of the property offered as security, to examine and ascertain the title, and became per-

sonally liable to the lender for any loss sustained through de-
fective title or overvaluation of the security, and the court
found he was the agent of the lender and his taking a com-
mission from the borrower in excess of the legal rate rendered
the contract usurious. But in *Hoyt* v. *Pawtucket Institution
for Savings*, 110 Illinois, on page 394, it is expressly said that
*Payne* v. *Newcomb* was not intended to decide that a broker
loaning the money of others, could not take a commission
from the borrower without rendering the loan usurious. See
also *Kihlholz* v. *Wolf*, 103 Illinois, 362; *Meers* v. *Stevens*, 106
Illinois, 549; *McGovern* v. *Union Mutual Insurance Co.*, 109
Illinois, 151.

*Hoyt* v. *Pawtucket Institution for Savings*, 110 Illinois, 390.
Taylor was a loan broker in Chicago. Hoyt made application
to the Institution for Savings for a loan of $5000 at 10 per
cent, which being forwarded by Taylor to the Institution, at
its residence in Rhode Island, was there accepted, and the loan
was paid by the Institution, (less $250, one half-year's interest,
deducted in advance,) by a draft to the order of Hoyt himself.
Taylor charged Hoyt $250 for commissions for securing the
loan, which was paid. This commission, and the agreement
therefor, was without the knowledge of the lender, and the
Institution got no part thereof, and received no more than 10
per cent on the money loaned, as evidenced by the note given
therefor. The court held: 1. Taking interest in advance was
not usurious; and 2. That the commissions charged by Taylor
did not make the transaction usurious, saying: "The Institu-
tion for Savings has never received, or agreed to receive, more
than the legal rate of interest upon this loan, and whatever in
addition thereto Hoyt has paid Taylor, has been in compensa-
tion for services of Taylor in procuring the loan for Hoyt,
which was something entirely between themselves, indepen-
dent of the Institution for Savings, with which the latter had
no connection. We fail to discover anything of usury in the
transaction."

*Brown* v. *Mortgage Co.*, 110 Illinois, 235. Hale & Co., of
Chicago, procured a loan from capitalists in Scotland, for
Brown, of $4500 for 5 years at 9 per cent, and the latter gave

his note therefor. Brown paid Hale & Co., or the latter deducted from the sum loaned, a commission of $225, and this, it was charged, rendered the loan usurious. The evidence, the court said, did not show Hale & Co. to have been the agents of the lender, adding: " If they were not the company's agents, but were the agents of Brown, in that transaction, although he might have paid them an amount which, added to the current interest upon the note, largely exceeded legal interest, it would not prove usury in the loan. It cannot concern the lender what the borrower pays to his own agents. *Kihlholz* v. *Wolf*, 103 Illinois, 362; *Phillips* v. *Roberts*, 90 Illinois, 492. The burden of proving a transaction usurious rests upon the party alleging it. *Boylston* v. *Bain*, 90 Illinois, 283; *Kihlholz* v. *Wolf, supra*. In the next place, at the time this loan was made, it was lawful to exact 10 per cent per annum interest on money loaned. The note given bears interest only at the rate of 9 per cent per annum, and runs for 5 years. It has been held that it is not usurious to exact the payment of interest in advance. *Mitchell* v. *Lyman*, 77 Illinois, 525; *Goodrich* v. *Reynolds*, 31 Illinois, 490; *S. C.* 83 Am. Dec. 240.; *McGill* v. *Ware*, 4 Scammon, 21. One per cent on $4500 (the amount borrowed) for 5 years makes just $225 ; and so in any view, interest has not been exacted beyond the rate of 10 per cent per annum — the then legal rate. *McGovern* v. *Union Mutual Life Ins. Co.*, 109 Illinois, 151." See also *Ammondson* v. *Ryan*, 111 Illinois, 506; *Cox* v. *Mass. Mutual Life Ins. Co.*, 113 Illinois, 382; *Haldeman* v. *Mass. Mutual Life Ins. Co.*, 120 Illinois, 390 ; *Mass. Mutual Life Ins. Co.* v. *Boggs*, 121 Illinois, 119; *Telford* v. *Garrels*, 132 Illinois, 550; *Sanford* v. *Kane*, 133 Illinois, 199; *Ryan* v. *Sanford*, 133 Illinois, 291.

*Mr. Robert G. Ingersoll* and *Mr. William Ritchie* for Fowler argued as to the law which was to govern the construction of the contract:

These are all New York contracts, to be governed by the New York statutes, and the securities are, consequently, void.

In 1873, 1874, and 1876 the statutes of New York provided as follows:

SECTION 1. The rate of interest upon the loan or forbearance of any money, goods or things in action shall continue to be seven dollars upon one hundred dollars for one year, and at that rate for a greater or less sum, or for a longer or shorter time.

SEC. 2. No person or corporation shall, directly or indirectly, take or receive any money, goods or things in action, or in any other way, any greater sum or greater value for the loan or forbearance of any money, goods or things in action, than is above prescribed.

SEC. 5. All bonds, bills, notes, assurances, conveyances and all other contracts or securities whatsoever, . . . whereupon or whereby there shall be reserved or taken, or secured, or agreed to be reserved or taken, any greater sum or greater value, for the loan or forbearance of any money, goods or other things in action, than is above prescribed, shall be void.

SEC. 8. Whenever any borrower of any money, goods or things in action shall file a bill in chancery for the discovery of the money, goods or things in action taken or received in violation of either of the foregoing provisions, it shall not be necessary for him to pay or offer to pay any interest whatever on the sum or thing loaned; nor shall any court of equity require or compel the payment or deposit of the principal sum or any part thereof as a condition of granting relief to the borrower in any case of a usurious loan forbidden by this chapter. Rev. Stats. N. Y. (Banks & Bros.) 6th ed. vol. 2, pp. 1164–6.

This is a suit to enforce a security. If the debt or contract for the performance of which that security was given be void, it is plain the security fails likewise and cannot be enforced. In Illinois, as elsewhere, the debt or contract is the principal while the mortgage is the mere incident. A contract void in the place where it is made and to be performed, is void everywhere. If this is a New York contract and is void under the laws of New York, it cannot be enforced in any court in Illinois, notwithstanding it may be in strict accord with the laws

of the latter state. As to the intent of the parties, with respect to which set of laws should govern the contract, we have here no express or explicit declaration from either. We must resort entirely to circumstantial evidence and inference to ascertain what that intent was. Upon this point we note the fact that the rate of interest adopted is not the Illinois rate but the New York rate. Now, a security bearing only 7 per cent could not have been meant for use in Illinois, where 10 per cent securities were at that time not only lawful, but common. The funds loaned were at New York, being obtained by draft on New York. The trustee in the trust deeds was a resident of New York. There is no evidence whatever that the money when obtained was to be used in Illinois.

Complainant's charter permitted it to " have such officer and agencies in other States as may be necessary for the transaction of its legitimate business," and accordingly it maintains an agent in Illinois, *but only the officers in New York have power to make binding contracts for loans.*

A security intended for negotiation and use, as such, at a certain place should be governed by the laws of that place. These bonds received their final shape and character in New York and were intended evidently for circulation there. These facts have always been deemed most significant in determining the *locus* of a contract. *Dickinson* v. *Edwards*, 77 N. Y. 573; *Wayne County Savings Bank* v. *Low*, 81 N. Y. 566; *Merchants' Bank* v. *Southwick*, 67 How. Pr. 324; *Tilden* v. *Blair*, 21 Wall. 241; *Gay* v. *Rainey*, 89 Illinois, 221.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

1. The appellant Fowler contends that as no order was made at the term when the first decree was entered, continuing until the succeeding term the motion and petition for rehearing, the decree of October 20, 1884, became final, and, consequently, the order at the June term, 1885, entered as of October 31, 1884, which granted a rehearing, as well as the decree of January 11, 1887, are to be treated as improvidently made, or as

nullities. We do not concur in this view. It is not disputed that if, in October, 1884, a rehearing was granted and the clerk omitted to enter an order to that effect, it would have been within the power of the court, at the succeeding term, by an order *nunc pro tunc*, to make the record speak the truth. But as the order granting a rehearing was entered under date of October 31, 1884, the presumption must be indulged, in support of the action of a court having jurisdiction of the parties and the subject matter — nothing to the contrary affirmatively appearing — that the facts existed which justified its action; and, therefore, that the court granted the application for a rehearing at the term at which the first decree was rendered. *Stockton* v. *Bishop*, 4 How. 155, 167; *Townsend* v. *Jemison*, 7 How. 706, 718. Besides, the exception taken by the defendants to the proceedings of June 30, 1885, was not, in terms, that the order, then formally made, was directed to be entered as of October 31, 1884, but that it granted a rehearing. If they intended to deny that the rehearing had been, in fact, ordered at the previous term of the court, the point should have been distinctly made upon the record.

2. The appellants Fowler and wife also contend that the contract of loan was a New York contract, and void under the laws of that State; and that neither the debt thus created, nor the mortgage given to secure the bonds, can be recognized, nor any recovery thereon had, in Illinois or elsewhere, for principal or interest. This contention rests upon the statute of New York, in force when the debt was created, providing that all bonds, bills, notes, assurances, conveyances and all other contracts or securities whatsoever, whereupon or whereby there shall be reserved or taken, or secured, or agreed to be reserved or taken, any greater sum or greater value, for the loan or forbearance of any money, goods or things in action, than at the rate of seven per cent per annum, shall be void. 1 Rev. Stats. N. Y. part 2, c. 4, title 3, § 5; vol. 2, 6th ed. (Banks & Brothers) 1164–6. The suggestion that by the contract of loan a rate of interest was reserved in excess of that allowed by the laws of New York, is based upon the ground that, although the bonds in suit call only for seven per cent interest,

a much larger rate was, in fact, exacted and secured by the company, taking into consideration the amount of the loan, and the sum actually received under the contract.

By the thirteenth section of a statute of Illinois, in force on and after February 12, 1857, entitled " An act to amend the interest laws of this State," it was provided: " Where any contract or loan shall be made in this state, or between citizens of this state and any other state or country, bearing interest at any rate which was or shall be lawful according to any law of the state of Illinois, it shall and may be lawful to make the amount of principal and interest of such contract or loan payable in any other state or territory of the United States, or in the city of London, England; and in all such cases such contract or loan shall be deemed and considered as governed by the laws of the state of Illinois, and shall not be affected by the laws of the state or country where the same shall be made payable." Gross's Stats. Illinois, 1869, 371, c. 54, § 13.

And by another act, in force on and after February 16, 1857, entitled " An act for the encouragement and security of loans of money," it was provided: " § 14. It shall be lawful for any person or corporation borrowing money in this state, to make notes, bonds, bills, drafts, acceptances, mortgages or other securities, for the payment of principal or interest, at the rates authorized by the laws of this state, payable at any place where the parties may agree; although the legal rate of interest in such place may be less than in this state; and such notes, bonds, bills, drafts, acceptances, mortgages or other securities shall not be regarded or held to be usurious; nor shall any securities taken for the same, or upon such loans, be invalidated in consequence of the rate of interest of the state, kingdom or country where the paper is made payable being less than in this state, nor of any usury or penal law therein. § 15. No plea of usury nor defence founded upon an allegation of usury shall be sustained in any court in this state, nor shall any security be held invalid on an allegation of usury where the rate of interest reserved, discounted or taken does not exceed that allowed by the laws of this state, in consequence

of such security being payable in a state, kingdom or country where such rate of interest is not allowed. § 16. It shall be lawful for all parties loaning money in this state, to take, reserve or discount interest upon any note, bond, bill, draft, acceptance or other commercial paper, mortgage or other security, at any rate authorized by the laws of this state, whether such paper or securities for principal or interest be payable in this state, or in any other state, kingdom or country, without regard to the laws of any other state, kingdom or country ; and all such notes, bonds, bills, drafts, acceptances or other commercial paper, mortgages or other security, shall be held valid in this state, whether the parties to the same reside in this state or elsewhere." Gross's Stats. Illinois, 1869, 372, c. 54.

These statutory provisions were in force at the time of the contract of loan involved in this case. And although the above acts of February 12, 1857, and February 16, 1857, were repealed by the act approved March 31, 1874, in force July 1, 1874, they remained in full force and effect as to rights acquired or causes of action existing under them, and before the repealing act went into operation. Rev. Stats. Illinois, 1874, pp. 1012, 1023, 1046, c. 131, § 5, paragraphs 297 and 299, and § 6. And by the act approved March 25, 1874, in force July 1, 1874, entitled "An act to revise the law in relation to the rate of interest," this provision of former acts was reënacted and preserved : "When any bond, bill, draft, acceptance, mortgage or other contract shall have been or shall be made in this state, or between citizens of this state, or a citizen of this state and any other state, territory or country, bearing interest at a rate lawful by the laws of this state, may be made payable in any other state, territory or country, such contracts shall be governed by the laws of this state." Rev. Stats. Illinois, 1874, 615, c. 74, § 8.

The contract of loan in question having been made between a citizen of Illinois and a corporation of another State, and the bonds having been executed in Illinois and secured by mortgage upon real estate there situated, the defence of usury, in a court of the United States sitting in and administering the

laws of Illinois, cannot be sustained upon the ground simply that the rate of interest, exacted or reserved, was in excess of that allowed by the law of the State in which the bonds are made payable.

3. We come now to consider whether, according to the law of Illinois, there was usury in this loan.

The statutes of Illinois, in force when this loan was made, fixed six per cent per annum as the rate of interest upon the loan or forbearance of any money, goods or things in action, with liberty to parties to stipulate or agree that ten per cent per annum be taken and paid. But it was provided that if any person or corporation in that State should contract to receive a greater rate of interest or discount than ten per cent upon any contract, verbal or written, such person or corporation should forfeit the whole of the interest contracted to be received, and should be entitled only to recover the principal sum due to such person or corporation. Gross's Stats. Illinois, 1869, 2d ed. pp. 370–1, c. 54; Rev. Stats. Illinois, 1874, p. 614, c. 74.

The contract was for a loan to Fowler of $9000, at ten per cent interest per annum. Seven per cent of the interest was evidenced by coupons attached to the nine bonds of $1000 each, and secured with the bonds by the deed of trust. The remaining three per cent, according to the testimony of Johnston, the company's local agent at Springfield through whom the loan was made, was "discounted" at the time the loan was finally negotiated. The amount received by Fowler in cash from the company was $7809.69. It was paid by a draft of Johnston on the company in favor of Fowler of date February 23, 1874.

In addition to the interest exacted for the loan, Fowler paid Johnston, as his commissions, the sum of $100. In reference to these commissions, and the relations held by him with the Trust Company, Johnston testified: "I had an agreement with the defendant that upon the completion of this loan he was to pay me a commission of one hundred dollars. After the loan was completed and after the draft exhibited had been delivered to the defendant, he paid me this one hundred dollars. The draft for $7809.69 exhibited herein was for the full

value of this $9000 loan on the day it was negotiated and closed, as before stated and shown, and no deduction from said full value of this loan on that day was made by me on account of my said commission or on any other account whatever. The agreement under which this commission was paid me by the defendant was unknown to the complainant, and no part of said $100 belonged to or was paid to the complainant. The expense of the abstract of title furnished by the defendant, and the acknowledging and recording of the trust deed, was of course paid by the defendant, but no deduction on account therefor was made from the present value of this loan on the day named. . . . In the negotiation of this loan, from its inception to its completion, I acted as the medium of communication between the complainant and the defendant. I was not authorized, neither did I attempt to accept or reject the defendant's application for this loan — I did, however, recommend its acceptance by the complainant — nor did I pass on the question of title to the real estate, all these matters having been submitted to and decided by the complainant in New York, nor for what I did in connection with this loan was I paid by the complainant anything, nor was I authorized by the complainant to do anything in connection with this loan more than I did and as I have shown."

On cross-examination Johnston said: "This was the first loan I made for complainant. Afterwards I made other loans, not only to these parties, but to others. *I had an understanding with the complainant company a short time before this loan was made. This loan and all other loans I made were in pursuance of this understanding.* The complainant furnished me with the blank 'Exhibit F' [the application for the loan] in this case and blank 'Exhibit D,' [the report of the loan as negotiated with the borrower,] and gave me instructions as to how they should be filled up, which I accordingly followed in filling up such blanks. When I procured an application in this way I forwarded the same to the company for their consideration, acceptance or rejection. In my endorsement on this application recommending the loan, in signing my name as agent, I understood myself *as agent of the company in this*

*matter.* Complainant acted through me in making this loan. *In my arrangement with complainant for making these loans it was the understanding that complainant was to pay me nothing whatever for my services, and that I was to procure whatever pay I had from the borrower."*

In reference to Johnston's agency for the Trust Company, it further appears that before this loan was made; one Rockwell, an officer or agent of the Trust Company, went to Springfield, Illinois, to get some one to act as its agent at that place. He asked Fowler to suggest some one to loan money for the company on real estate. Fowler recommended Johnston, who, upon being introduced to Rockwell by Fowler, was appointed. To the written application for the loan, the following was appended : " I have examined the within application, believe the statements to be correct, and recommend a loan to applicant of $10,000 on the security offered. R. P. Johnston, Agent."

The bonds having been executed by Fowler, they were transmitted by Johnston to the company, at their New York office, in a communication headed " Agency of Equitable Trust Company, Springfield, Ills., Feb. 23, 1874," and signed by him as " Agent."

It is to be observed that out of the principal sum loaned the Trust Company retained, by way of discount, what was claimed to be the present value of such amount as would pay, in advance, three per cent of the stipulated interest for the whole period of the loan, five years. In view of this feature in the case there was much discussion at the bar as to whether it was permissible, in Illinois, for the lender to exact and receive interest in advance upon a loan made at the highest rate allowed by its laws. In view of numerous decisions of the Supreme Court of that State, it is not necessary to examine this question upon principle ; for it is the settled doctrine of that court that the mere taking of interest in advance does not bring a loan within the prohibition of usury. In *Goodrich* v. *Reynolds*, 31 Illinois, 490, 498, it was said : " The remaining plea sets up usury in this, that the interest was made payable semi-annually. It has long been settled, such reserva-

tion is not usurious. The whole interest may be lawfully reserved in advance." *McGill* v. *Ware*, 4 Scammon, 21, 28; *Mitchell* v. *Lyman*, 77 Illinois, 525, 529, 530; *Brown* v. *Scottish-American Mortgage Co.*, 110 Illinois, 235, 239; *Hoyt* v. *Pawtucket Inst. for Savings*, 110 Illinois, 390, 394; *Telford* v. *Garrels*, 132 Illinois, 550, 554.

Whether that doctrine would apply where the loan was for such period that the exaction by the lender of interest in advance would, at the outset, absorb so much of the principal as to leave the borrower very little of the amount agreed to be loaned to him, we need not say. The present case does not require any expression of opinion upon such a point, for the interest reserved in advance on the loan to Fowler was only of three per cent out of ten per cent, and a reservation to that extent, it would seem, is protected by the decisions of the state court. The defence of usury, so far as it rests upon the fact that three per cent of the stipulated interest was taken in advance by the lender, must, therefore, be overruled.

But, in view of other decisions of the Supreme Court of Illinois, must not that defence be sustained, in respect to this loan, upon the ground that the borrower was in effect required, as a condition of the loan, and, in addition to the highest legal rate of interest, to pay $100, under the guise of commissions, to the lender's agent for procuring the loan? It is not the case simply of a borrower employing a broker — who has no regular or established connection with the lender as agent and no arrangement with the lender in respect to compensation for his services — to effect a loan, and agreeing to pay him commissions. With the agreements of the latter kind the courts have no concern, and they are not permitted to affect the rights of the lender, where he does nothing more than lend his money at such rate of interest as the statute permits. Such is the rule in Illinois. *Hoyt* v. *Pawtucket Inst. for Savings*, 110 Illinois, 390, 394; *Telford* v. *Garrels*, 132 Illinois, 550, 554; *Sanford* v. *Kane*, 133 Illinois, 199, 205.

These authorities, however, have no application to the case before us. The Trust Company established an agency at Springfield, Illinois, for the purpose of securing loans upon

real estate, and to that end constituted Johnston as its agent. It made him a medium of communication between it and those in that locality who might wish to borrow money. It supplied him with the necessary blank forms, and expected him to make a report as to the sufficiency of the security offered. Of course it knew that no one would regularly perform the duties of such a position without reasonable compensation. That the agent might receive such compensation, the company came to an understanding with him at the outset that he must make the borrower pay for his services. With such an arrangement between it and its agent, the company need not be informed in any particular case of the amount the latter would exact from the borrower as compensation for effecting a loan. But it must be held to have known that the agent would not devote his energies and time to its business gratuitously, and would not forward to it an application for a loan, unless the borrower agreed to compensate him for his services. The services performed by Johnston, as its regular local agent, charged with the duty of receiving and forwarding applications for loans, with his opinion as to the sufficiency of the security offered, were of substantial value to the company, as much so as if they had been performed under an arrangement that the company should, out of the money loaned, retain for him the amount which, by previous agreement with the borrower, he was to receive as his compensation. And the services performed by him were just what they would have been had he accepted the agency under such a specific arrangement as that just suggested.

Under all the circumstances, was not this transaction tainted with usury? Should not the $100 paid to the company's agent be regarded as part of the amount which Fowler was required to pay for the use of the money borrowed? These questions are answered by the Supreme Court of Illinois. In *Payne* v. *Newcomb*, 100 Illinois, 611, 616, the inquiry was whether the commissions paid by the borrower to the person through whom a loan, at the highest legal rate, was effected, were to be taken into account in determining whether the transaction was usurious. That case is so directly in point

that we feel justified in making extracts from the opinion of the court. It was said : " Did Stevens [the lender] know that Newcomb [the broker] was charging for his services, and collecting it from the borrower ? Newcomb says that it was the understanding he was to get it of the borrower, and that establishes the fact beyond all cavil. Were these payments of commissions of benefit or profit to Stevens ? They unquestionably were, as they paid his agent for long-continued and valuable services rendered by Newcomb for him. No one will believe that Newcomb thus incurred liability to Stevens, and rendered skilful and valuable services for him for more than twenty years as a mere gratuity. It was not so understood. Newcomb says he was to get his pay from the borrower. Stevens then paid what he owed to Newcomb by requiring the agent to impose it on the persons to whom loans were made. The arrangement amounted to no more or less than requiring the agent to loan for a per cent sufficiently high to yield Stevens the highest rate of interest allowed by the law, and to pay the agent for his responsibility, labor, skill and trouble. In effect, the transaction is the same as had the loan been made at fifteen per cent, and ten had been paid to Stevens and five to Newcomb. This was the result which was by the parties intended before the inception of the transaction. It was in pursuance of an arrangement of the lender and his agent. . . . It is, however, claimed that Stevens is not liable for what Newcomb retained and charged for what is called commissions — that he had the right to charge any sum he chose, and that would not render the loan usurious. Had Stevens not known that Newcomb was making such charges, it may be that he would not have been affected by them. But here it was agreed between Stevens and Newcomb that the latter should charge a commission to the borrower to pay him for his services. Stevens obtained the services of Newcomb. They were of value to him, and no one will pretend that Newcomb rendered them as a gratuity. They were rendered for Stevens, and they were paid for by him by indirectly charging the amount to and requiring the borrower to pay it, and this, too, by the express authority of

Stevens. Had he directed Newcomb to loan at fifteen per cent for the first year, and ten per cent for each succeeding year, and to retain five per cent on the loan for the first year, and two and a half per cent for renewals and extensions, and to retain the extra per cent above ten per cent as compensation for his services, would any one say that was not usury? And in what does the transaction differ by the form given it by the agreement of the parties? In each case, Stevens would get Newcomb's services, and compel the borrower to pay them." And the court adds: "There is no more familiar rule in the law than that the usury laws cannot be evaded by mere pretences, shifts or evasions. This rule runs through all of the books, and requires the citation of no authority in its support. The policy of the statute is to protect the weak and necessitous from the oppression of the strong, and to sanction such transactions as this would be to defeat that policy. Courts have no right to judge of the policy, but must enforce the law as they find it. Whenever deemed proper, the General Assembly will change the policy by modifying or repealing the statute, but until so modified or repealed we have no power to alter or change its provisions."

In the previous case of *Peddicord* v. *Connard*, 85 Illinois, 102, 103, the court said: "It is first urged that although there may have been a greater rate of interest retained than is permitted by the law, still, it was not usury, unless it was agreed and so understood when the transaction occurred, and that there was no such understanding or agreement in this case. Such seems to be the ruling of the courts in Great Britain and the various States of the Union in which the entire debt is forfeited or heavy penalties are imposed when the transaction is tainted with usury. The law does not favor forfeitures, and in such cases the courts hold to a rigid and strict compliance with the law imposing the penalty. It is, therefore, probable that those courts would not give so strict a construction if the only loss were, as it is with us, the interest on the debt for the money loaned or forborne. Reason does not require it, as it does where the debt and interest are lost by reason of taking or contracting for a trifle more than is sanctioned by the law.

Hence we are not prepared to adopt so rigid a construction. If an usurious contract is made, whether express or implied, at the time of or subsequent to the entering into the agreement, to take or reserve more than lawful interest, it is such an agreement as is within the purview of the statute." And, in a subsequent case : " The statute cannot be avoided by any shift or device which may be resorted to by the parties. The form of the transaction is not material, but whenever it clearly appears that more than the legal rate of interest has been exacted, the contract will be held to be usurious." *Leonard* v. *Patton*, 106 Illinois, 99, 104.

We do not find that the principles announced in *Payne* v. *Newcomb* have been overruled or modified by the state court. On the contrary, that case has been frequently referred to and its doctrines recognized. In *Hoyt* v. *Pawtucket Inst. for Savings*, 110 Illinois, 390, 394, it appears that Taylor, a loan broker of Chicago, sent to the Pawtucket Institution for Savings, in Rhode Island, an application by Hoyt for a loan, which was accepted. The lender retained $250 out of the $5000 loaned, to pay a half year's interest in advance. The broker charged the borrower $250 as his commission, and the latter received only $4500. The court said : " This commission received by Taylor was not *from any arrangement with the Institution for Savings or with its knowledge*. It got no part of the commission, and received no more than ten per cent interest on the money loaned. Brokers negotiating loans of other people's money may charge the borrower commissions, without thereby making a loan at the full rate of legal interest usurious. *Ballinger* v. *Bourland*, 87 Illinois, 513 ; *Phillips* v. *Roberts*, 90 Illinois, 492 ; *Boylston* v. *Bain*, 90 Illinois, 283. *Payne* v. *Newcomb*, 100 Illinois, 611, was not intended to decide anything to the contrary, as seems to be supposed by counsel for plaintiffs in error. In the latter case there was an *express understanding between Stevens, the lender, and Newcomb, his agent, that Newcomb should get his commissions from the borrower.*" In *Cox* v. *Life Ins. Co.*, 113 Illinois, 382, 385, the court, after observing that the fact that an agent, *without the authority, consent or knowledge of his principal*, upon

loaning the money of the latter, exacts from the borrower a sum in excess of lawful interest does not make the loan usurious, said of *Payne* v. *Newcomb*, 100 Illinois, 611, that it was " quite another case than the one before us, and does not apply to the facts of the present case. There, services were rendered by the loan agent for the lender of the money, and the commission paid by the borrower to the agent was paid *under a pre-arrangement made between the lender and the agent* that the latter should get his compensation for the services rendered by him to the lender, *by charging commissions to the borrower.*" See also *Ballinger* v. *Bourland*, 87 Illinois, 513, 516 ; *Kihlholz* v. *Wolf*, 103 Illinois, 362, 366 ; *Meers* v. *Stevens*, 106 Illinois, 549, 552; *Ammondson* v. *Ryan*, 111 Illinois, 506, 510 ; *Mass. Mut. Life Ins. Co.* v. *Boggs*, 121 Illinois, 119, 127.

This case cannot be distinguished from *Payne* v. *Newcomb*. In view of the decisions of the Supreme Court of Illinois, and the manifest policy of the law of that State relating to usury, we cannot adjudge that a loan, under a fixed arrangement between the lender and an individual that the latter will act as the agent of the former at a particular place, and obtain compensation for his services by way of commissions exacted from the borrower, is to be governed by the same principles that apply in the case of one who holds no relations of agency with the lender, but is a mere broker getting his commissions from the borrower without the knowledge, authority or assent of the lender. It is not consistent with the law of Illinois, as declared by its highest court, that the lender, when taking the highest rate of interest, shall impose upon borrowers the expense of maintaining agencies in different parts of the State through which loans may be obtained. We, therefore, hold that the exaction by the Trust Company's agent, pursuant to his general arrangement with it, of commissions over and above the ten per cent interest stipulated to be paid by the borrower, rendered this loan usurious.

The result is that the recovery must be limited to the principal sum due the company. The statute declares, in respect to an usurious contract, that the lender shall only recover the principal sum due; in other words, that judgment shall be rendered only for that sum.

But what are the rules for the guidance of the court in determining the principal sum due? In Illinois it is settled that a party making application to a court of equity for affirmative relief against an usurious contract is entitled to such relief only upon the condition that he shall pay, or offer to pay, the principal sum with legal interest. *Clarke* v. *Finlon*, 90 Illinois, 245, 248; *Sanner* v. *Smith*, 89 Illinois, 123, 125; *Carter* v. *Moses*, 39 Illinois, 539, 542; *Henderson* v. *Bellew*, 45 Illinois, 322, 324; and *Tooke* v. *Newman*, 75 Illinois, 215, 217. It is equally well settled there that one who has voluntarily paid usurious interest cannot recover it back in an action at law. *Riddle* v. *Rosenfeld*, 103 Illinois, 600, 603; *Hadden* v. *Innes*, 24 Illinois, 381, 384; *Town* v. *Wood*, 37 Illinois, 512, 516; *Carter* v. *Moses*, 39 Illinois, 539, 542; *Tompkins* v. *Hill*, 28 Illinois, 519. But it is the established doctrine of the Supreme Court of that State that these rules have no application where the transaction has not been settled and the lender sues to recover a balance due on the principal sum. In such a case the borrower, being sued, may have all payments made by him on account of interest applied in diminution of such part of the principal as remains unpaid. *Harris* v. *Bressler*, 119 Illinois, 467, 472; *Payne* v. *Newcomb*, 100 Illinois, 611, 623; *Hamill* v. *Mason*, 51 Illinois, 488; *Heffner* v. *Vandolah*, 62 Illinois, 483, 486; *Saylor* v. *Daniels*, 37 Illinois, 331; *Mitchell* v. *Lyman*, 77 Illinois, 525. Such is the uniform construction of the statute, which, in the case of usury in a loan, forfeits the whole of the interest contracted to be received, and permits a recovery only for the principal sum due. As there is no interest really due, if the transaction be usurious — the right to recover interest being forfeited at the moment the contract of loan is consummated — whatever the borrower pays *on account of the loan* must go as credit on the principal sum; otherwise, the usurer would get the benefit of his illegal contract, and the statute be rendered inoperative.

The court below proceeded upon the ground that the Trust Company was entitled to a judgment for the amount actually received by Fowler, in cash, with interest at six per cent from the date of the decree, and no credit was given on the prin-

cipal sum for numerous payments made by the borrower on account of interest. Under the settled course of decisions in the Supreme Court of Illinois, this decree must be held erroneous. Fowler paid off all the interest represented by the coupons, and made payments after the debt became due. And as the company retained out of the $9000 an amount equal to the present value of three per cent of the ten per cent stipulated to be paid, Fowler must be regarded as having paid that amount on the principal debt. Within the meaning of the statute, the amount due the company, at the date of the decree below, was: 1. The principal sum, $9000, diminished by all payments made by Fowler at any time on account of the debt. 2. The sums paid by the company for insurance, taxes and assessments, with interest at ten per cent on each from date of payment until the rendition of the decree, that being the rate fixed in the deed of trust in respect of sums paid by the mortgagee for insurance, taxes and assessments on the property which the mortgagors should have paid. The decree should have been only for the aggregate amount due on these two accounts, ascertained in the mode just indicated, with interest from its rendition at six per cent per annum, the rate allowed on judgments by the statute of Illinois.

The Trust Company insists that the decree should have made to it an allowance for solicitor's fees. There is no foundation for this claim. The trust deed provides that in the case of a sale by the trustee, at public auction, upon advertisement, all costs, charges and expenses of such advertisement, sale and conveyance, including commissions, such as were at the time of sale allowed by the laws of Illinois to sheriffs on sale of real estate on execution, should be paid out of the proceeds. This provision does not impose upon the borrower the burden of paying to the lender a solicitor's fee where a suit is brought for foreclosure. The commissions referred to in the deed are allowed only where the property is sold, upon advertisement, by the trustee, without suit. The trust deed made no provision for a solicitor's fee to the company in the event suit was brought. That a suit became necessary because of the refusal

of the trustee to act, is no reason for taxing such a fee against the mortgagor.

> *The decree is reversed, and the cause remanded with directions to modify the decree in accordance with the principles of this opinion.*