SPEER, District Judge
(concurring). I cannot wholly agree with the views of the majority of the court, although'I concur to a certain extent in the judgment of reversal. The action of the circuit court of the northern district of Texas, from which the appeal is taken in this case, seems to he in accordance with the decisions of the highest *329 court of appeal of that state. However these may vary from the views with regard to similar controversies which may be entertained elsewhere, they must be regarded as controlling a question of title to land in that state. The action is trespass to try title, and is pending at law. The plaintiff must recover on the strength of his legal title, and in accordance with the decision of the highest appellate court of Texas he has no title to the main body of the land, for the reason that it is the rural homestead of the defendant. This fact is found by the jury, and there is nothing in the way of evidence set out in the record, except in the particulars hereinafter mentioned, which would justify the court in disregarding or setting aside that finding. The finding is itself supported by the decision of the Texas court of appeals in Pellat v. Decker, 72 Tex. 581, 10 S. W. 697. The court observes in that case:
“Pellat and wife actually and continuously used tlie property as tbeir home from 1872 until this action was brought; and this, as to such property, is the conclusive designation of homestead, against which no declaration to the contrary can be allowed any weight. The law provides a method, when the rural homestead is of a larger tract, whereby the homestead may be designated, and the excess subject to execution identified.”
It is true that the defendant, Maria Little, and her husband, William Little, then in life, made an affidavit that no portion of the property in controversy was their homestead, or the homestead of any other person or persons. This affidavit is the same instrument which purports to appoint J. B. Watkins their agent to secure the loan upon which the plaintiff’s supposed title is based. How, it is plain from a careful perusal of that instrument that the plaintiff, Watkins, was-not the agent of Maria Little and her husband, but was the agent of the lender. In illustration of this, the same instrument makes the applicant swear that “the answers to the following questions given by affiants are full and correct: What is your indebtedness? How much live stock and other property in addition to real estate have-you,—horses, mules, cattle, hogs, poultry, machinery, implements, etc.?” It makes the applicants for the loan swear to the character-of the land, and in the paper there are several blanks, which indicate-that it is merely a printed form, prepared for carrying on the business of the J. B. Watkins Land & Mortgage Company, of Laurens, Kan. These questions are manifestly put in the interest of the lender. Similar expedients have been resorted to by other companies engaged in lending money, and in order to avoid the laws of the state against usury. See Security Co. v. Gay, 33 Fed. 636. The principle decided in that case was affirmed by the supreme court of the United States in Trust Co. v. Fowler, 141 U. S. 384-415, 12 Sup. Ct. 1-9. It cannot be doubted, therefore, that the plaintiff, as the agent of the lender, had knowledge of the existence of his homestead. In point of fact it did not exist, and the only remaining question is, does this affidavit,, however unconscionable it may be, estop the party making it from the assertion of homestead rights? In the case of Loan Co. v. Blalock, 76 Tex. 86, 13 S. W. 12, the borrower made a sworn application for a loan, in which he stated that the land was not his homestead; that he owned another tract, therein described, which he and his-family occupied as a homestead. The court said:
*330 “The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender who is attempting to secure a lien on the homestead in actual use and possession of the family, based on declarations of the husband and wife, made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution. If property be homesteaded in fact and law, lenders must understand that liens cannot be fixed upan it, and that declarations of husband and wife to the contrary, if made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law, and Incumber homesteads with •liens forbidden by the constitution.”
It cannot be said that the plaintiff was a bona fide purchaser without notice. The facts were sufficient to put him on inquiry, and he is, therefore, chargeable with notice of all he could have ascertained if inquiry had been made. Hor did he, at the sale by the substituted trustee, succeed to the rights of a bona fide purchaser without notice, which might have protected him, even though he had actual notice himself. He was, as we have stated, the agent of the lender; and, since he had notice of the homestead, the principal also had notice, and was not herself entitled to be treated as a bona fide purchaser. The case, therefore, is in all respects different from that of Hazzard v. Fitzhugh (decided at the present term) 24 C. C. A. 232, 78 Fed. 554. There the plaintiff was the bona fide purchaser of a security similar to that on which the plaintiff here relies. She, however, bought a title which •came through a third person, and, however colorable the transaction might have been between those who were parties to the device to defeat the Texas law, so far as she was concerned, she was entitled •to be treated as an innocent purchaser. Here, however, the plaintiff knew, or might have known, the fact of the homestead. But it is insisted that he was misled by the fraud and turpitude of the defendants, and because of that fraud he ought to recover. What seems to be a sufficient reply to this is the fact that we are in a court of law, and, if the facts set up in this answer are true, and the fraud is so great as would avoid the estate created in behalf of the defendants by the constitution of the state of Texas, it is an equitable cause of action, and cannot be maintained at law in an action of trespass to try title. In that respect also the case differs from that of Hazzard v. Fitzhugh, supra, where the proceedings were pending and disposed of in a court of equity.- In one respect only do I think the judgment should be reversed. The defendant and her husband owned 315 acres of land, made up of five tracts. Of these, four of the tracts, aggregating 242 acres, were contiguous, and one tract of 73 acres was some four miles distant from the others. The four tracts were originally prairie lands, and were in cultivation by defendant’s husband, and upon one of them was situate the family mansion. From the 73-acre tract the family got their accustomed supply of firewood, and their supplies of timber used about the cultivated land. The defendant and her husband mortgaged 170 acres out of the four tracts, and in the written application for the loan made a sworn statement that the 170 acres was not homestead property, and that the other portions of the lands not mortgaged (some 145 acres, including the 73-acre tract) constituted the homestead. The actual homestead in use may be described as in the brief of defendant’s attorney: “A mansion house with ad *331 joining land.” Bouv. Law Dict. and Worcester. “The place oí residence; the place where he lives.” Philleo v. Smalley, 23 Tex. 502. This definition might be applied, however, to a tract of 1,000 acres as well as to one of 200 acres. The exempted homestead, however, under Texas law, is defined by the constitution as follows: “The homestead shall consist of not more than two hundred acres of land which may be in one or more parcels with the improvements thereon.” As stated by the supreme court of Texas in Brooks v. Chatham, 57 Tex. 32:
“The constitution expressly provides that the rural homestead may consist of one or more parcels, and the fact that they may be distant several miles the one from the other is immaterial; and in many cases, to enable the head of the family to maintain a prairie farm, it may be necessary to have woodland, which can only be obtained at a distance even as great as was the distance between the two tracts of land in this cause claimed to be the homestead of the appellants; but when the lands are separated there must be such use as will amount to a designation of homestead of the subsequently acquired parcel as fully as the same would be required in the original homestead. The constitution does not determine how the homestead shall be designated, but its protection is extended only to that which is homesteaded. Nor have we any statute which provides how the designation of the homestead shall be made, which is to be regretted.”
It cannot be doubted, therefore, that prior to the creation of the plaintiffs lien in this case the entire 315 acres was, so far as use could make it so, the actual homestead of the defendant and her husband, but that the constitution gave its protection to an undefined 200-acre tract only out of the whole tract. When the homestead consists of more than 200 acres, the excess is subject to designation, and its designation may be compelled by the creditor, if not voluntarily by the owner (Rev. St. 1879, arts. 2346-2364), and these statutes are cumulative only (Id. art. 2366). The mortgagee in the case at bar was put on notice by the application for the loan that the lands proposed to be mortgaged lay in the same surveys and same neighborhood as that stated to constitute the homestead upon which was the mansion house, and the tracts actually touch each other. And yet it contented itself with the loose statement that “our homestead, upon which we reside, and to which our title is perfect, consists of about two hundred acres; the same being in the surveys and patents of Wm. Freeman, Wm. Gatlin, and the Dixon league.” It is very clear, therefore, that under the Texas law the 145 acres not mortgaged must be increased to the extent of 55 acres out of the tract mortgaged to make the requisite exemption under the Texas constitution. I think it equally clear under the Texas law that where the actual homestead in use consisted, as in this case, of 315 acres, the defendant and her husband could, prior to creating a lien on the excess over 200 acres, voluntarily designate which part of the 315 acres would be their exempted homestead. The attorney for the defendant does not deny her right to make such designation within certain limits after credit given, but does dispute her right to make such designation prior to credit given, and as a basis of credit. There is quite a difference, however, between restricting the limits of a homestead below the 200-acre tract exempted by law and defining the particular full 200 acres exemption out of a still larger body of lands. It was certainly never intended to cut off the right of landowners to raise money on *332 the excess over 200 acres. The case of Kailway Co. v. Winter, 44 Tex. 612, cited by defendant’s attorney to the point that where the tract consists of more than 200 acres the homestead exemption allowed to the head of the family must be taken out of that portion of the tract contiguous to that upon which the improvements are situate, and that he will not be permitted to pick over the different tracts to make up the 200 acres exempted, seems to be addressed to the idea that, as the creditor’s right accrued before a designation of the particular exempted tract out of a large body of lands, an equitable adjustment of the rights of the parties, standing somewhat in the relations of tenants in common, would require that the head of the family should take his 200 acres contiguous to the improvements, which are made his by the law. But this principle certainly cannot be invoked to enable the debtor to nndo a designation of a homestead made by him upon the faith of which he obtains money, and extend it to his other lands, not so designated. As the head of the family and the wife designated at the time of the loan certain tracts as the homestead, they are estopped from denying that the land thus designated constitutes a part of the homestead. And to the extent that these parts designated as homestead fall short of the 200-acre exemption allowed by the constitution, the defendant is entitled to go upon the part mortgaged to complete the 200-acre exemption; but no further.
This view of the ease makes the 73-acre tract necessarily a part of the homestead, and, in effect, sustains the sixth assignment of error, leaving the other action of the circuit court undisturbed.