Crystal LUEBBERS *v.* MONEY STORE, INC., Robert Kinder
and Barbara Kinder, and the Connecticut Surety Company

00-858 40 S.W.3d 745

Supreme Court of Arkansas
Opinion delivered March 22, 2001

*The Nixon Law Firm,* by: *David G. Nixon, Michael Shahan,* and *Paige E. Young,* for appellant.

*Rose Law Firm,* by: *John T. Hardin;* and *J. Trail Rogers,* for appellees.

*Morgan & Turner,* by: *Todd Turner;* and *Friday, Eldredge & Clark,* by: *R. Christopher Lawson,* for *amici curiae* Betty Dickerson, Angela Dooley, Wanda Williams, Sharon McGhee, Denise New, Kathy Martin, Roger Splettstoesser, and Stephanie Thomas.

*Wright, Lindsey & Jennings LLP,* by: *David M. Powell* and *Claire Shows Hancock;* and *Bowman and Brooke LLP,* by: *Robert M. Buell* and Charles K. Seyforth, Of Counsel, for *amicus curiae* Advance America, Cash Advance Centers of Arkansas, Inc.

ANNABELLE CLINTON IMBER, Justice. Crystal Luebbers appeals from a summary-judgment order in favor of Appellees Money Store, Inc., Robert Kinder and Barbara Kinder, and The Connecticut Surety Company. In her appeal, she asserts that the circuit court erroneously upheld the constitutionality of section 4(b) of Act 1216 of 1999, the "Check-Casher's Act" ("the Act"), codified at Ark. Code Ann. § 23-52-104(b) (Repl. 2000). We agree with appellant's contention and hold that section 23-52-104(b) is an invalid attempt to evade the usury provisions of the Arkansas Constitution and, further, that such an attempt violates the constitutional mandate requiring separation of powers set forth in Article 4 of the Arkansas Constitution. We reverse and remand.

It is undisputed that Appellant Crystal Luebbers was a customer of the Lowell branch of Appellee Money Store, Inc. ("the Money Store"), and that she entered into more than one agreement entitled "Arkansas Deferred Presentment Agreement" with the Money Store. For example, the agreement signed by Ms. Luebbers on September 3, 1999, shows that she wrote the Money Store a check for $400, and the Money Store paid her $350 cash in return. The $50 difference consisted of a $40 "check cashing fee" and a $10 "deferred presentment fee." In consideration for the deferred presentment fee, the Money Store expressly agreed to "hold your

check and not present it to your bank for payment before 9/17." Additionally, the agreement stated that Ms. Luebbers had the right between September 3 and September 17 to repurchase her check from the Money Store by paying the face amount of the check ($400). In the event that she did so, the Money Store agreed to "deliver your check to you but you will not be entitled to a refund of any fees you already paid us." Finally, the agreement disclosed that the $50 in fees constituted an "annual percentage rate" of 372.4%.

It is further undisputed that each aspect of the agreement is in compliance with the Act. Section 23-52-104(c) of the Act authorizes check cashers to charge a fee of 10% of the face amount of a personal check "[f]or the service of selling currency ... in exchange for checks." Here, that fee actualized as the $40 "check cashing fee." Likewise, section 23-52-104(c) authorizes the $10 fee for a deferred presentment option. Moreover, with regard to all fees and deferred presentment check-cashing transactions authorized by the Act, section 23-52-104(b) specifically provides that:

> The fee, when made and collected, shall not be deemed interest for any purpose of law, and a check-cashing transaction, including one (1) with a deferred presentment option, shall not be and shall not be deemed to be a loan, loan contract, or a contract for the payment of interest notwithstanding any disclosures required by this chapter.

In her original class-action complaint against the Money Store and its owners and operators, Ms. Luebbers alleged that her agreement with the Money Store, as well as similar agreements between the Money Store and all of its other customers, violate the usury provisions of Article 9, section 13, of the Arkansas Constitution. She further asked the circuit court to declare that section 23-52-104 of the Act violates Article 19, section 13, of the Arkansas Constitution.[1] The defendants filed a motion to dismiss in which they

---

[1] The owners and operators of the Money Store were identified as "Defendants John Doe's 1-20" in the original class-action complaint. Ms. Luebbers subsequently filed a first amended and restated class-action complaint in which she sought to hold appellees the Money Store, Robert Kinder, and Barbara Kinder jointly and severally liable for all relief granted to Ms. Luebbers and members of the class. Specifically, she alleged that the Money Store is nothing more than an alter ego of its owner, Robert Kinder, and that the Money Store and the Kinders jointly engaged in a civil conspiracy in violation of the usury provisions of Arkansas. Ms. Luebbers also alleged in the amended complaint that The Connecticut Surety Company is liable on its surety bond with the Money Store as a result of violations of the usury laws of Arkansas.

asserted that they were in compliance with the Act in all respects and that the legislature, by its enactment of section 23-52-104(b) of the Act, "intended to exempt, and did exempt, check-cashing businesses from the laws pertaining to usurious interest rates." The circuit court held a hearing on April 6, 2000, and considered the pleadings and attached affidavits and exhibits, thereby converting the motion to dismiss into a motion for summary judgment. *Crockett v. Essex Home, Inc.*, 341 Ark. 558, 19 S.W.3d 585 (2000). On May 2, 2000, the court entered its order granting summary judgment in favor of the appellees and dismissing Ms. Luebbers's complaint and amended and restated complaint with prejudice.[2] In granting summary judgment, the circuit court upheld the constitutionality of Ark. Code Ann. § 23-52-104. From that determination comes this appeal.

■ The sole issue presented in this appeal is whether the circuit court erred in upholding the constitutionality of Ark. Code Ann. § 23-52-104(b) and in granting summary judgment in favor of the appellees. We have repeatedly held that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000); *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997).

■ Article 19, section 13, of the Arkansas Constitution states, in relevant part:

(a) General Loans:

(i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.

\*\*\*

(b) Consumer Loans and Credit Sales: All contracts for consumer loans and credit sales having a greater rate of interest than

---

[2] The circuit court's summary-judgment order disposed of all the claims between the parties.

seventeen percent per annum shall be void as to principal and interest and the General Assembly shall prohibit the same.

Thus, only if the transaction at issue constitutes a loan and if the fees charged constitute interest will the constitutional prohibition against usurious interest rates apply. *Haley v. Greenhaw*, 235 Ark. 481, 360 S.W.2d 753 (1962). By means of section 23-52-104(b), the General Assembly has excluded deferred presentment check-cashing transactions, such as the transaction between Ms. Luebbers and the Money Store on September 3, 1999, from the confines of the Arkansas Constitution's usury provisions by declaring that such agreements shall not be deemed to be loans and the fees collected shall not be deemed interest "for any purpose of law[.]" The question then is whether the General Assembly may lawfully make such a declaration.

■ In reviewing the constitutionality of an act, we recognize that every act carries a strong presumption of constitutionality. *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999). The burden of proof is on the party challenging the legislation to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality, if it is possible to do so. *Foster v. Jefferson County Bd. of Election Comm'rs*, 328 Ark. 223, 944 S.W.2d 93 (1997). An act will not be struck down unless it conflicts with the constitution "clearly and unmistakably." *Board of Trustees v. City of Little Rock*, 295 Ark. 585, 589, 750 S.W.2d 950, 952 (1988) (citing *Board of Trustees of Municipal Judges & Clerks Fund v. Beard*, 273 Ark. 423, 620 S.W.2d 295 (1981); *Buzbee v Hutton*, 186 Ark. 134, 52 S.W.2d 647 (1932)).[3] The conflict between Ark. Code Ann. § 23-52-104(b) and the Arkansas Constitution is clear and unmistakable.

■ "[I]n Arkansas whether a transaction is usurious is a question arising under the Constitution, Art. 19, § 13, and is therefore for the courts rather than the legislature." *Bell v. Itek Leasing Corp.*, 262 Ark. 22, 26-A, 555 S.W.2d 1, 4 (1977). Thus, whether a transaction is usurious under Ark. Const. art. 19, § 13, must be decided by the courts pursuant to the judicial power vested in them by Ark. Const. art. 7, § 1. Furthermore, the judicial power to decide whether a transaction is usurious shall only be exercised by

---

[3] The appellees suggest that the rational-basis test as set out in *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983), should be applied in reviewing the constitutionality of section 23-52-104(b). However, the rationality standard of review applies to constitutional challenges based upon equal-protection-type arguments, and, thus, is not applicable here.

the courts and not by the General Assembly, pursuant to the separation-of-powers doctrine set forth in Ark. Const. art. 4, §§ 1 and 2:

*§ 1. Departments of government.*

The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confined to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.

*§ 2. Separation of departments.*

No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

■ An act of the General Assembly violates the separation-of-powers doctrine when it deprives the courts of the power to decide a judicial question. *Ball v. Roberts*, 291 Ark. 84, 722 S.W.2d 829 (1987); *McConnell v. State*, 227 Ark. 988, 302 S.W.2d 805 (1957). One such judicial function is the ascertainment of the facts of a particular case. *McConnell v. State, supra.* While it is within the legislative authority to provide that "certain results shall follow particular actions or conditions; ... the ascertainment of the act or condition and the application of the consequences belong to the courts." *McConnell v. State*, 227 Ark. at 991, 302 S.W.2d at 808 (citing *Burt v. Williams*, 24 Ark. 91 (1863)). Accordingly, this court has held that the General Assembly may not make a *per se* determination that certain private property is used exclusively for public purposes and is thus exempt from a tax because such a determination "is a judicial function performed only after appropriate fact-finding by the trial court." *City of North Little Rock v. Pulaski County*, 332 Ark. 578, 968 S.W.2d 582 (1998). Likewise, the General Assembly may not make a *per se* determination that a certain transaction is not a loan or that a certain fee is not interest because such determinations are judicial functions performed only after appropriate fact-finding by the trial court.

In *Strickler v. State Auto Finance Co.*, 220 Ark. 565, 249 S.W.2d 307 (1952), we construed a provision in the Arkansas Installment Loan Law similar to the one at issue here, which stated that " 'such charges shall not be considered to be interest or compensation for the use or forbearance or detention of money.' " *Id.*, 220 Ark. at

574, 249 S.W.2d at 312 (quoting section 27(c) of Act 203 of 1951). That provision was referring to service charges for overhead expenses. Likewise, in this case the fees at issue were meant in part to "defray operational costs incurred in the check-cashing business[.]" Ark. Code Ann. § 23-52-104(a). We held such legislative language to be an "ineffectual device" to evade the usury provisions of the Arkansas Constitution, as well as "a patent attempt by the Legislature to usurp a judicial function." *Id.*, 220 Ark. at 575-76, 249 S.W.2d at 312.

 Additionally, this court has repeatedly held that the form of the contract is not material. *Doyle v. American Loan Co.*, 185 Ark. 233, 46 S.W.2d 803; *Habach v. Johnson*, 132 Ark. 374, 201 S.W. 286 (1918). "The mere fact that the contract has the form of a contingency will not exempt it from the scrutiny of the court, which is *bound to exercise its judgment* in determining whether the contingency be a real one, or a mere shift and device to cover usury." *Doyle v. American Loan Co.*, 185 Ark. at 236, 46 S.W.2d at 804 (emphasis added). Likewise, here the mere fact that the transaction has been given a certain form by the General Assembly will not exempt it from the scrutiny of the court, which is bound to exercise its judgment in determining whether or not the form of the transaction is a device to cover usury. In other words, the court does not take the instrument at face value. *Bunn v. Weyherhaeuser Co.*, 268 Ark. 445, 598 S.W.2d 54 (1980). This principle is reflected in the oft-quoted maxim: " 'The law shells the covering, and extracts the kernel. Names amount to nothing when they fail to designate the facts.' " *Winston v. Personal Finance Co. of Pine Bluff, Inc.*, 220 Ark. 580, 586-87, 249 S.W.2d 315, 319 (1952)(citing *Sparks v. Robertson*, 66 Ark. 460, 51 S.W. 460 (1899)). It does not matter what the added charges are called, because the courts look to the facts of each case to determine whether the additional charges are a cloak for usury; and, if they are, the contract is void. *Bunn v. Weyherhaeuser Co., supra.* Courts must consider all attendant circumstances in deciding whether a transaction is usurious and may not rely merely on names. *Id.*; *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991). Accordingly, the General Assembly may not avoid the constitutional prohibition against usury by merely stating that fees shall not be deemed "interest" or by stating that a transaction shall not be deemed to be a "loan."[4] Thus, we hold that Ark. Code Ann. § 23-

---

[4] We refrain from deciding in this appeal whether the $50 in fees charged by the Money Store constitute interest on a loan because that issue, although briefed extensively by the parties, was not decided by the trial court and is not before this court on appeal. Issues not ruled on by the trial court are not preserved for appellate review. *Beshears v. State*, 340

52-104(b) clearly and unmistakably runs afoul of the separation-of-powers doctrine and Article 19, Section 13, of the Arkansas Constitution.

██ ██ The appellees point out that Ark. Const. art. 19, § 13(b), grants the General Assembly the power to pass laws regarding usury. However, by its plain language, that section provides that the General Assembly shall pass laws to "prohibit" usury. *State v. R & A Investment Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999) ("[Article] 19, § 13, expressly authorizes the General Assembly to enact legislation to punish parties who knowingly violate the usury provisions. Moreover, the plain language of subsection (b) mandates that the General Assembly prohibit usurious contracts."); *Strickler v. State Auto Finance Co.*, *supra* ("The Constitution directs the enactment of laws to prohibit, and not to permit, usury."). We cannot say that section 23-52-104(b) "prohibits" usury. Instead, that section is an attempt by the legislature to exclude deferred presentment check-cashing transactions from the confines of the Arkansas Constitution's usury provisions. The appellees also state that "the Art. 19, § 13 power to 'prohibit' by necessity includes some power to 'define' what is not prohibited." In support of that proposition, appellees cite the cases of *Evans v. Harry Robinson Pontiac-Buick, Inc.*, 336 Ark. 155, 983 S.W.2d 946 (1999) and *Hare v. General Contract Purchase Corp.*, 220 Ark. 601, 249 S.W.2d 973 (1952), However, *Evans* is a choice-of-law case that is inapposite, and *Hare* actually supports our holding in this case when it states:

> "Yet it is apparent that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter. Courts, therefore, perceived the necessity for disregarding the form, and examining into the real nature, of the transaction. If that be in fact a loan, no shift or device will protect it."

*Hare v. General Contract Purchase Corp.*, 220 Ark. at 608, 249 S.W.2d at 977 (quoting the language of Chief Justice Marshall from *Scott v. Lloyd*, 9 Peters 446, as quoted in *Tillar v. Cleveland*, 47 Ark. 287, 1 S.W. 516 (1886)). It is therefore clear that the courts must investigate the true nature of an alleged usurious transaction without regard to the form of the transaction. The Legislature may not usurp this judicial function.

Reversed and remanded.

GLAZE, J., not participating.