The Honorable Terry Smith State Senator 101 Hal Court Hot Springs, AR 71901
Dear Senator Smith:
You have requested an Attorney General opinion concerning library privacy. I am issuing the following opinion in response to your request.
Your specific questions are:
 (1) May a parent or person acting as the parent or legal guardian be informed by library personnel of his/her child's currently checked out library materials pursuant to A.C.A. § 13-2-704?
 (2) A library automation system allows anyone holding a properly bar-coded library card to electronically access that cardholder's account stating what is checked out to that patron. Is this allowable pursuant to A.C.A. § 13-2-704? Is the library's computer system, by extension, considered to be the "library" when the parent enters the child's barcode? May the library allow the parent to obtain a printout of library materials checked out by the child if the parent initiates the electronic query?
RESPONSE
Question 1 — May a parent or person acting as the parent or legalguardian be informed by library personnel of his/her child's currentlychecked out library materials pursuant to A.C.A. § 13-2-704?
It is my opinion that the plain language of A.C.A. § 13-2-704 and of its companion statute, A.C.A. § 13-2-703, indicates that parents and legal guardians are not allowed to be informed by library personnel of their children's currently checked out library materials. However, individual libraries can have policies under which parents are deemed to be the libraries' "patrons" on behalf of their children. Under such policies, parents would be entitled to have access to their children's library materials under these statutes. The fact that these statutes do not provide for parental access gives rise to certain constitutional concerns about the rights of parents. The rights of children must also be weighed in this inquiry. Before discussing these issues, I will set out the language of these two statutes in full.
A.C.A. § 13-2-703 states:
13-2-703. Disclosure prohibited.
 (a) Library records which contain names or other personally identifying details regarding the patrons of public, school, academic, and special libraries and library systems supported in whole or in part by public funds shall be confidential and shall not be disclosed except as permitted by this subchapter.
 (b) Public libraries shall use an automated or Gaylord-type circulation system that does not identify a patron with circulated materials after materials are returned.
A.C.A. § 13-2-704 states:
13-2-704. Disclosure permitted.
 A library may disclose personally identifiable information concerning any patron:
(1) To the patron;
 (2) To any person with the informed, written consent of the patron given at the time the disclosure is sought; or
 (3) To a law enforcement agency or civil court, pursuant to a search warrant.
A.C.A. § 13-2-704.
The two above-quoted statutes plainly prohibit disclosure of information about any library "patron" to anyone other than the patron without the patron's written consent (except to a law enforcement agency or civil court pursuant to a search warrant).
It should be noted that some libraries may require the parent to sign for the child's library privileges or may otherwise have a contractual relationship with the parent under which the parent would be deemed the library's "patron" for purposes of these statutes in a situation involving a child. In such situations, these statutes would clearly permit disclosure to the parent of the child's currently checked out library materials.[1] However, if the library does not involve the parent in its contractual arrangement with the child, the child would be deemed the "patron" within the meaning of these statutes, and would be entitled, under their language, to the privacy that they afford.
As previously noted, this aspect of these statutes gives rise to certain constitutional concerns. More specifically, it raises a question concerning the balance between the constitutional rights of parents (as parents) and the constitutional rights of children to privacy.
The U.S. Supreme Court has not addressed this issue in the context of the privacy of library materials. However, the question of parents' rights and children's rights (and the balance between them) has arisen in other contexts. These cases may provide some guidance in analyzing any constitutional concerns that arise out of A.C.A. §§ 13-2-703 and -704.
The U.S. Supreme Court has long recognized that the right of parents "to make decisions concerning the care, custody, and control of their children" is a fundamental liberty of parents that is protected under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.Troxel v. Granville, 530 U.S. 57, 66 (2000); Santosky v. Kramer,455 U.S. 745 (1982); Parham v. J.R., 442 U.S. 584 (1979); Wisconsin v.Yoder, 406 U.S. 205, 232 (1972); Prince v. Massachusetts, 321 U.S. 158
(1944); Stanley v. Illinois, 405 U.S. 645 (1972); Pierce v. Society ofSisters, 268 U.S. 510 (1925); Meyer v. Nebraska, 262 U.S. 390, 399, 401
(1923). The Court has recognized this right in various contexts, including contexts involving issues of education, Pierce, supra, religion and morality, Wisconsin v. Yoder, supra, and privacy (abortion), Bellottiv. Baird, 443 U.S. 622 (1979) (striking down a state's parental consent requirement, but recognizing that: "a state reasonably may determine that parental consultation often is desirable and in the best interest of the minor." Id. at 640). From its earliest decisions on the issue of parental authority, the Court has recognized that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." Pierce v. Society of Sisters,268 U.S. at 534-535. Moreover, the Court has engaged in a presumption, based upon the "natural bonds of affection," that parents will act in the best interests of their children, Parham v. J.R.,442 U.S. 584, 602 (1979), and has held that the state may not presume that the interests of parent and child diverge. Santosky v. Kramer, 455 U.S. 745, 759 (1982).
However, this constitutional right of parental authority is not absolute. The Court has explicitly recognized, in a variety of contexts, that children also have constitutional rights. See, e.g., Brown v. Bd. ofEduc. of Topeka, 347 U.S. 483 (1954) (equal protection); Carey v.Population Servs. Int'l., 431 U.S. 678 (1977) (privacy); Tinker v. DesMoines Sch. Dist., 393 U.S. 503 (1969) (expression). Indeed, the Court stated in Bellotti v. Baird, supra:
 A child, merely on account of his minority, is not beyond the protection of the Constitution. As the Court said in In re Gault, 387 U.S. 1, 13 (1967), "whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."
Bellotti, supra, at 633.
Similarly, in Planned Parenthood of Missouri v. Danforth, 482 U.S. 52
(1976), the Court said: "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." Danforth, supra, at 74, citing Breedv. Jones, 421 U.S. 519 (1975); Goss v. Lopez, 419 U.S. 565 (1975); Tinkerv. Des Moines School Dist., 393 U.S. 503 (1969); In re Gault, 387 U.S. 1
(1967).
The Court has treated children's constitutional rights as identical with those of adults in some contexts. For example, children are entitled to due process protection against the deprivation of liberty and property interests to the same extent as adults. See, e.g., In re Gault,387 U.S. 1 (1967) (due process requirements of notice, assistance of counsel, and opportunity to confront accusers, apply to juvenile proceedings); In re Winship, 397 U.S. 358
(1970) (children can be found guilty only upon proof beyond a reasonable doubt); Ingraham v. Wright, 430 U.S. 651, 674
(1977) (corporal punishment of schoolchildren implicates constitutionally protected liberty interest); Goss v. Lopez, 419 U.S. 565 (1975) (children may not be deprived of certain property without due process).
Although the Court has extended full constitutional protection to children in some contexts, it has not concluded as a general matter that the constitutional rights of children are necessarily coextensive with the constitutional rights of adults. Rather, the Court has stated that "the status of minors under the law is unique in many respects,"Bellotti, supra, at 634, and has therefore taken a flexible approach to the application of constitutional principles to them.
In doing so, the Court has paid special attention to the balance between the rights of parents and the rights of children. The Court has said:
 The unique role in our society of the family, the institution by which "we inculcate and pass down many of our most cherished values, moral and cultural," Moore v. East Cleveland, 431 U.S. 494, 503-504 (1977) (plurality opinion), requires that constitutional principles be applied with sensitivity and flexibility to the special needs of parents and children. We have recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.
Bellotti, supra, at 634.
The Court went on to state: "Viewed together, our cases show that although children generally are protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for "concern, . . . sympathy, and . . . paternal attention." Id. at 635, citing McKeiver v. Pennsylvania,403 U.S. 528, 550 (1971) (plurality opinion).
Taking this flexible approach, the Court has allowed a minor's constitutional rights to override parental constitutional rights in only very limited contexts. In Planned Parenthood of Missouri v. Danforth,482 U.S. 52 (1976), the Court struck down a state statute that allowed abortions for unmarried minors only after the minor had obtained the written consent of a parent or person in loco parentis. This provision, in effect, gave the parent the power of absolute veto over the minor's constitutional right to seek an abortion. The state argued in defense of the consent provision that the law may properly impose stricter limitations on minors than would be permissible with adults, in the interest of protecting the welfare of minors. The Court acknowledged this principle, but concluded that the state has no interest that would be served by giving a third party — even a parent — an absolute, and possibly arbitrary, veto without justification over the minor's decision to seek an abortion. The Court stated: "Any independent interest the parent may have in the termination of the minor daughter's pregnancy is no more weighty than the right of privacy of the competent minor mature enough to have become pregnant." Danforth, supra, at 75. The Court emphasized that its decision would not apply to all minors without regard to their age or maturity. The holding turned on the fact that the consent provision in question did not allow for a consideration of these factors.
The Court took the same approach in Bellotti, supra. There, the Court again considered a parental consent requirement in a state abortion statute. The Court went to great lengths to acknowledge the importance and crucial role of parents in society, and the fact that in many cases, the state must defer to parental wishes in matters involving their children's decisions. However, the Court focused on the fact that the abortion context is significantly different from other contexts in which minors make decisions. The Court noted in particular the fact that unlike other decisions (such as a decision to marry, for which the state may require parental consent), the right to seek an abortion cannot be preserved indefinitely. Moreover, the effects of denying that right are far-reaching and could be substantially detrimental to the minor. "[T]here are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible." Id. at 642. In light of these factors, the Court struck down the parental consent provision because it did not provide the alternative of allowing the minor an opportunity to demonstrate to a court, without parental constraints, that she was mature enough to make the abortion decision, or to show that the abortion would be detrimental.
Both Danforth and Bellotti appear to indicate that the courts will override parental rights in favor of a child's constitutional rights only in situations where denying the child's rights would have far-reaching and detrimental effects. These cases also stand for the proposition that the balance between children's rights and parental rights must be undertaken anew in each case, with special consideration being given to the facts of the case, including the maturity of the child, and the effect on the child of giving precedence to the parents' rights.
Another case that may provide some helpful insight with regard to the question you have presented is Ginsberg v. New York, 390 U.S. 629
(1968). Although this case did not involve the issue you have raised, it does contain certain statements that the Court made in dicta that bear upon your issue. Ginsberg involved a conviction for the sale of sexually oriented magazines to a minor. The state conceded that the conviction would not have withstood a First Amendment challenge if the sale had been made to an adult. It was argued that the conviction likewise violated the constitutionally protected rights of minors to receive such materials. The Court rejected the argument. One of the grounds for its decision was the importance of the parental role. The Court stated:
 [C]onstitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, supra, at 166. The legislature could properly conclude that parents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility.
Ginsberg, supra, at 639.
The cases discussed above do not definitively answer the question of whether A.C.A. § 13-2-703 and -704 would survive a constitutional challenge by parents. However, the principles that can be derived from these cases do indicate the factors that a court might consider in interpreting these statutes. A court presented with this issue must consider the extent to which these statutes interfere with the role of parents,[2] the particular aspect of the parental role that is interfered with, whether this interference is warranted in light of the constitutional privacy rights of the children involved, and the effect of giving one right precedence over the other, under the particular circumstances of the case (including the particular child's level of maturity). Although because of the myriad of variations in factual scenarios, it is unclear how a court would rule on a parent's constitutional challenge to A.C.A. § 13-2-703 and -704, it is my opinion that the above-discussed principles provide a basis for a plausible challenge to be made. At the same time, however, it is equally plausible that a mature child could demonstrate, under certain factual circumstances, that the disclosure of his or her library materials to parents could have a far-reaching and detrimental effect that would warrant the prohibition of such disclosure.
As always, it should be remembered that statutes are entitled to a presumption of constitutionality and will be upheld if a court can interpret them constitutionally. Luebbers v. Money Store, 344 Ark. 232,40 S.W.3d 745 (2001).
Question 2 — A library automation system allows anyone holding a properlybar-coded library card to electronically access that cardholder's accountstating what is checked out to that patron. Is this allowable pursuant toA.C.A. § 13-2-704? Is the library's computer system, by extension,considered to be the "library" when the parent enters the child'sbarcode? May the library allow the parent to obtain a printout of librarymaterials checked out by the child if the parent initiates the electronicquery?
It is my opinion that the language of A.C.A. §§ 13-2-703 and -704 indicates an intent that the information contained in libraries' automation systems concerning individual patrons not be accessible by anyone other than the patrons whom the information concerns, or persons who have those patrons' written consent (except law enforcement, as stated in the statute). Thus, under a strict interpretation of this statutory language, parents who are not "patrons" on behalf of their children should not be able to access their children's library account through the library's automation system. (As noted in response to Question 1, individual libraries can have policies under which parents are deemed to be the "patrons" on behalf of their children, and will therefore have access to their children's library materials under these statutes. As also discussed in response to Question, the failure of A.C.A. § 13-2-703 and -704 to provide for parental access gives rise to constitutional concern.)
However, it is my opinion that these statutes do not address situations in which a patron's barcode has been unlawfully used by a third party, and that it is unlikely as a legal matter that libraries would be held liable such third parties' actions.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] In addition, under the federal Family and Educational Right to Privacy Act (FERPA) (20 U.S.C. § 1232g), parents may be entitled to have access to this information if the library is a school library. However, this is not to say that the FERPA, as a federal law, would supersede the provisions of A.C.A. §§ 13-2-703 and -704. It would not do so because it does not actually conflict with these state laws. That is, the FERPA does not require action that is prohibited by state law; rather, the FERPA simply provides that the educational institution could lose its federal funding if it chooses to comply with state law rather than with FERPA's provisions.
[2] The Bellotti court noted that Pierce, Yoder, Prince, and Ginsberg,supra, "contribute to a line of cases suggesting the existence of a constitutional parental right against undue, adverse interference by the state." Bellotti, supra, at 639, n. 18.